Jennie E. FRANKLIN, Plaintiff,

v.

HERBERT LEHMAN COLLEGE et al., Defendants.

78 Civ. 2330 (CHT).

United States District Court,
S. D. New York.

Feb. 25, 1981.

Jennie E. Franklin, pro se.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants; Mark Schwartz, Judith Levitt, Marian M. Schuman, New York City, of counsel.

## OPINION

TENNEY, District Judge.

The existence of multiple remedies for employment discrimination may be a mixed blessing under certain circumstances. In this Title VII action,[1] the plaintiff started down and followed one avenue of relief after several government agencies indicated that she was on the right track. Unfortunately, her failure to explore alternate routes within the specified time has now foreclosed those paths. The Court recognizes that Title VII's limitations periods may be subject to equitable considerations and that the administrative procedures followed here left much to be desired. Nonetheless, the Court is constrained to grant the defendants' motion for summary judgment on the ground that the plaintiff's suit is time-barred.[2]

---

1. Title VII, 42 U.S.C. § 2000e–2(a), provides in part that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." The statute requires that a complainant pursue administrative remedies before instituting a civil action in federal court.

2. The Court initially granted defendants' summary judgment motion in a Memorandum Endorsement dated October 7, 1980. Subsequently, the plaintiff submitted additional papers which the Court chose to construe as a motion to reargue. The defendants then responded to the plaintiff's submissions.

*The Facts*

In 1969, plaintiff Jennie E. Franklin was appointed as a part-time lecturer for the Department of Education at Herbert H. Lehman College ("the College").[3] The following year, she was hired to serve as a full-time lecturer, a position she held through the 1974–1975 academic year. On September 16, 1974, Franklin was notified by letter that the Personnel and Budget Committee of the Department of Education had voted not to recommend her reappointment for the 1975–1976 term. Franklin was informed soon afterward that the Committee intended to reconsider its initial decision. On October 2, 1974, the plaintiff received another letter stating that the Committee had voted to sustain its decision not to recommend reappointment.

On September 19, 1974, Franklin wrote a letter to Joel W. Barkan, Director of the Office of Civil Rights ("OCR") for the Department of Health, Education, and Welfare ("HEW"). The letter indicated that Franklin had spoken to an OCR employee who suggested that she send a letter and supporting documents describing her complaint. In the letter, Franklin recounted incidents that had occurred during the time she was employed by the College and charged that her mistreatment and dismissal were motivated by racial and sexual discrimination. According to the plaintiff, "[n]o doubt remains that were I a male (either Black or White) or a white female I would have received both support and compensation for my artistic achievements."

OCR responded to Franklin's complaint in a letter dated December 3, 1974 and signed by Joel W. Barkan. This letter stated:

> Our office has received your letter of complaint and attached information dated September 19, 1974 in which you have alleged discrimination against you by Herbert Lehman College, on the basis of race in their decision not to tenure you as a faculty member.
>
> Executive Order 11246 prohibits discrimination on the basis of race, creed, color,

sex or national origin in employment. The Office for Civil Rights is authorized to investigate complaints in this area. Due to the heavy workload and backlog of complaints in the office, we are unable to investigate your complaint at this time. Prior to initiating the investigation, you will be contacted to discuss the details of the allegations.

> If you have any questions, please feel free to contact this office at (212) 264–3828.

The next communication Franklin received was a letter from OCR, signed by Barkan, which was dated April 11, 1975. After referring to Franklin's September 19th letter and OCR's anti-discrimination authority, Barkan's letter explained:

> As a result of an agreement between the Office of Federal Contract Compliance (OFCC) and the Equal Employment Opportunity Commission (EEOC), we are now referring all complaints to the OFCC for transmittal to EEOC. This office will, however, retain a copy of your complaint and use it as a factor in determining general and specific review priorities and investigate, decide and resolve any complaint in the context of a compliance review at the institution, should our overall targeting factors result in scheduling the institution for review prior to an investigation by the Equal Employment Opportunity Commission. We will, of course, be kept informed by the EEOC of the status of your complaint.
>
> Should you have further questions, please contact Ms. Glorietta Gatston, Associate Director for Administration, Office of Federal Contract Compliance, Department of Labor, Washington, D. C. 20210.

Franklin then received a letter from OFCC, dated August 14, 1975 and signed by the Director, Philip J. Davis. This letter stated that HEW "has forwarded your complaint to this office for appropriate action." The letter explained that OFCC implemented Executive Order 11246 and that EEOC

---

3. The defendants named in Franklin's complaint are the College; Deans Beryl Herdt and J. W. Wheeler; and Professors Philip Freedman, Archie Lacey, and Theodore Benjamin.

administered Title VII. The letter continued.

This Office has signed a Memorandum of Understanding with the Equal Employment Opportunity Commission which provides that the Commission investigate complaints of discrimination covered by both Executive Order 11246, as amended, and Title VII.

Since your complaint appears to involve discrimination within our jurisdiction, we have referred it to the EEOC for investigation. You can expect to hear from the EEOC. If you have any further information or questions concerning your complaint, please contact the EEOC directly at:

Mr. Arthur W. Stern, Director
New York District Office—EEOC
90 Church Street—Rm. 1301
New York, New York 10007

An EEOC letter, dated August 22, 1975 and signed by Arthur Stern, was then sent directly to Franklin. The letter stated that Franklin's "letter of complaint" had been forwarded by OFCC and requested that she fill out and have notarized the enclosed Charge of Discrimination Form and Affidavit. The letter provided a telephone number which Franklin could call if she had any questions. Stern's letter also included a copy of the letter that Franklin had originally sent to OCR. In a postscript, Stern noted that Franklin "might wish to incorporate its contents into the EEOC charge and affidavit forms."

Franklin's Charge of Discrimination Form was received by EEOC on September 17, 1975. According to the plaintiff, she also filed charges with the New York State Division of Human Rights on September 18, 1975, although no documentary evidence supporting this statement has been submitted. More than two years later, Franklin received a letter, dated November 7, 1977 and signed by Stern, stating that the EEOC charge had been dismissed because it was not filed within 180 days after the alleged violation, as required by Title VII. Her "right to sue" letter, dated January 26, 1978 informed Franklin that if she wished to pursue her suit, a civil action had to be filed within 90 days.

Franklin's complaint in this action is stamped April 17, 1978, although it does not indicate who put that stamp on at that time. The same date appears on her affidavit in support of her motion to proceed in forma pauperis. Both the complaint and affidavit were executed on official Southern District forms, presumably provided by the court, which provide blank spaces for the plaintiff to fill in the specifics of her Title VII claim and her financial situation. An order granting Franklin in forma pauperis status was signed by then Chief Judge Edelstein on May 17, 1978. This order, as well as Franklin's complaint, was officially filed with the Clerk of the Court on May 19, 1978. Notwithstanding this May 19th filing date, the Court assumes that Franklin's complaint and affidavit were executed on April 17th at the court or at the *pro se* clerk's office, and then held for filing until the Chief Judge approved her application to proceed in forma pauperis.

If April 17 is viewed as the "constructive filing date" of Franklin's complaint, then she did file within the 90 day time period. Her complaint was untimely, however, if May 19 is deemed to be the date of filing. It appears likely that Franklin submitted her complaint on time and that filing was delayed while the *pro se* office reviewed the complaint and waited for the order granting in forma pauperis status. Therefore, the Court is inclined to adopt the view that Franklin's complaint was constructively filed on April 17 and thus satisfied the 90 day requirement. *Cf. Hawkins v. International Harvester*, 461 F.Supp. 588, 591 (W.D.Tenn.1978) (statutory filing period may be tolled when plaintiff submits notice of right to sue or requests appointment of counsel). The Court need not decide this question, however. As discussed below, the Court concludes that Franklin did not file a timely complaint with the EEOC and that the limitations period should not be tolled due to the resulting prejudice to the defendants.

On May 19, 1978, the Clerk of the Court issued a summons to the named defendants directing them to answer Franklin's complaint within twenty days after service of the summons. The receipts from the United States Marshals Service indicate that the defendants served did not receive a copy of the summons and complaint until March 1979.[4]

On February 28, 1979, the College President received a letter from HEW stating that OCR had commenced an investigation of Franklin's complaint, pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.* The letter requested that the College provide certain data and arrange for OCR interviews with several professors. Apparently, the investigation was conducted and completed a short time later. A letter dated April 27, 1979 was sent to the President via certified mail by OCR's Region II Director who reported that the investigation was closed. The letter stated that "[j]urisdiction in this matter [was] conferred by Title IX of the Education Amendments of 1972 and Title VII of the Civil Rights Act of 1964." It continued:

> The facts established during the investigation of this complaint do not support the complainant's allegation of race and sex discrimination. We, therefore, find the policies and procedures utilized by Lehman College in determining the eligibility of candidates for a CCE to be in compliance with the requirements of the legal authorities mentioned above.

According to the date stamped on the letter, it was not received in the Office of the President until July 16, 1979. It remains a mystery why the letter is dated April 27, 1979 but was not stamped "Received" until almost three months later.

---

**4.** According to the Marshals Service Process Receipt, Dean John W. Wieler, who presumably is the J. W. Wheeler named in the complaint, could not be located and served. Accordingly, the complaint against him would have to be dismissed for lack of jurisdiction, an issue not raised by the defendant.

**5.** If the complainant initially institutes a proceeding with a state or local agency, the time to file with the EEOC is extended to 300 days, or

*Arguments*

Title VII requires that a complainant file a charge of employment discrimination with the EEOC within 180 days after the alleged violation occurred.[5] 42 U.S.C. § 2000e–5(e). Notice of the complaint must be served upon the persons or entity named in the charge within 10 days after the filing. *Id.* If the EEOC dismisses the complaint and issues a "right to sue" letter, the complainant can institute a civil action within 90 days after the date the letter was received. *Id.* § 2000e–5(f)(1).

The defendants argue that they are entitled to summary judgment on the ground that Franklin's complaint is time-barred; she did not file a complaint with the EEOC until September 17, 1975 which was almost one year after her dismissal. Although the defendants recognize that Title VII's statute of limitations may be tolled, they contend that "the primary equitable reason for tolling the time limitations is absent here." Memorandum of Law In Opposition to Plaintiff's Motion To Reargue Defendants' Motion for Summary Judgment ("Defendants' Memorandum II") at 3.

First, defendants point out that they were not responsible for Franklin's delay in filing with the EEOC. Since they did not act to obstruct her claim, they should not be prejudiced by her delay. Second, defendants argue that Franklin was not "lulled into complacency by HEW [because] she was quickly informed that there would be delays in the processing of her complaint." *Id.* at 4. HEW did eventually investigate and dismiss Franklin's charges, pursuant to its authority under Title IX of the Education Act and Title VII of the Civil Rights Act. According to defendants, "HEW did

---

30 days after notice is received that the state proceeding has been terminated, whichever is first. 42 U.S.C. § 2000e–5(e). In this case, Franklin stated that she filed charges with the New York State Division of Human Rights the day after her EEOC complaint was received. The applicable period is therefore 180 days, as opposed to 300 days. Even if the 300-day time limit were applied, Franklin's EEOC complaint would not have been timely.

not have nor assert jurisdiction under Title VII; therefore, filing a complaint with that agency cannot serve to toll the statute of limitations." *Id.*

Finally, defendants claim that they did not have timely notice of Franklin's charges. It is unclear precisely when the defendants learned that Franklin had filed a claim with the EEOC. The defendants state that "[i]t was not until after the plaintiff completed her complaint with EEOC on September 18, 1975 [sic] that defendants were notified that plaintiff had brought any complaint against defendants outside any grievance proceedings." *Id.* at 2. This statement, however, does not reveal how long after the filing date the defendants were informed of the complaint and the plaintiff does not address this question. The other relevant notification dates are established by the record. The defendants were informed in February 1979 that OCR was conducting an investigation. The following month, they were served with the summons and Franklin's complaint, which had been filed about 11 months earlier. Relying on Title VII's time limitations and the "policy of repose" reflected therein, the defendants argue that they should not "be prejudiced by plaintiff's desire to be heard in every forum regardless of her lengthy delays." *Id.* at 5.

Each of the defendants' contentions will be briefly discussed below. While the Court declines to unconditionally embrace the defendants' first two arguments, it finds the third argument concerning lack of notice persuasive. Because the defendants had insufficient notice of this untimely action, summary judgment should be granted in their favor.

## Discussion

The Second Circuit has expressly declined to decide the "still open question" of whether Title VII's 180-day filing requirement is a jurisdictional prerequisite to a civil action. According to the court of appeals, the Supreme Court has

> implied that tolling might be appropriate only where the defendant has actively

misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights, or has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum.

*Smith v. American Presidents Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir. 1978). The Circuit Court has also observed that this is "consistent with common law tolling principles [because] [t]he primary consideration underlying statutes of limitations is that of fairness to the defendant." *Id.* at n.12. The defendant should not be required to defend a suit when "evidence has been lost, memories have faded and witnesses have disappeared." *Id., quoting Order of R. R. Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). The view espoused by the Second Circuit is consistent with the position adopted by other circuit courts. For example, both the Third and Fifth Circuits have expressly endorsed the principle of equitable tolling in Title VII suits, but have declined to toll the limitations period when the facts of a particular case did not warrant the exercise of the courts' equitable powers. *See Chappell v. Emco Mach. Works Co.,* 601 F.2d 1295 (5th Cir. 1979); *Hart v. J. T. Baker Chem. Corp.,* 598 F.2d 829 (3d Cir. 1979); *see also Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir. 1978) ("we have recently indicated that even assuming that tolling is permissible . . ., tolling would be improper if appellant was represented by counsel during [the limitations] period").

■ First, the Court rejects the defendants' blanket assertion that the limitations period should not be tolled because they were not responsible for the delayed filing of Franklin's complaint with the EEOC. Undoubtedly, the defendants' action or inaction is an important consideration in determining whether the statute of limitations should be tolled in a given case. Yet neither the Second Circuit nor other courts that have addressed the question have suggested that this is the exclusive or decisive

factor to be weighed. Indeed, the *Smith* court specifically referred to a situation in which the plaintiff raises the right claim in the wrong forum, which would not necessarily involve any misconduct on the part of the defendant.

■ The defendants' second argument—that Franklin was not "lulled into complacency" by HEW—is also unconvincing. It is true that HEW, through OCR, did eventually conduct an investigation of Franklin's complaint and that the agency never asserted jurisdiction pursuant to Title VII. Yet a lay person cannot be expected to understand the differences between the various anti-discrimination statutes and the agencies that implement them. Indeed, the agencies involved in this case—HEW, OCR, OFCC, and EEOC—must sound like the government's brand of alphabet soup to the average citizen. The letters that Franklin received from these agencies indicated that she had contacted the proper office and that her complaint would be pursued. The letter from HEW, sent via OCR, stated that the Office "is authorized to investigate complaints" and that Franklin would be contacted to "discuss the details of the allegations." The OFCC letter informed Franklin that her complaint would be referred to EEOC because the Commission investigated "complaints of discrimination covered by both Executive Order 11246, as amended, and Title VII." When the EEOC received Franklin's complaint from OFCC, the Commission asked her to fill out an official Charge of Discrimination Form to be filed with the agency. None of these letters suggested, either expressly or implicitly, that Franklin should pursue other federal or state remedies within a given time in order to avoid a dismissal for untimeliness. On the contrary, each agency indicated that Franklin was, or would be placed, in the right hands. Indeed, the Second Circuit has expressly held that filing a complaint with the OFCC can "constitute a filing with the EEOC." *Egelston v. State*

6. This ruling, however, does not assist Franklin's case. Her letter of complaint was not received by the OFCC until more than 180 days

*Univ. College at Geneseo*, 535 F.2d 752, 755 n.4 (2d Cir. 1976).[6]

The defendants' third and most persuasive argument is that they should not have to defend against Franklin's suit because they did not receive timely notice of her complaint. Title VII provides that a complaint must be filed with the EEOC within 180 days of the alleged violation and that the persons or entities charged must receive notice of the complaint within 10 days of the filing. In the case at bar, plaintiff's EEOC complaint was filed almost a year after she was finally informed of her dismissal and it is unclear when the defendants received notice of the filing. As noted above, defendants state that they were notified about the Title VII charge some time after "plaintiff completed her complaint with EEOC" in September 1975. Nothing in the record indicates when, or in what form, this notice was received and the Court cannot assume that the 10-day notice requirement was satisfied. Furthermore, assuming that Franklin's April 17, 1978 complaint in this action was timely, the defendants were not served until March 1979, as indicated by the service receipts. Since the defendants received a letter from HEW in February 1979 stating that OCR was investigating Franklin's complaint, they may well have assumed that no court action was pending.

■ Title VII's statute of limitations should not be tolled under circumstances that would seriously prejudice a defendant who is not responsible for the delay. Such circumstances are present here. The record does not establish that the defendants received timely notice of either Franklin's EEOC charges or the complaint in this Title VII action. She was dismissed from her job more than 4 years before the summons and complaint were served and it is likely that "evidence has been lost, memories have faded and witnesses have disappeared." *Smith v. American Presidents Lines, Ltd., supra*, 571 F.2d at 109 n.12, *quoting Order of R.R.*

after the alleged violation. Furthermore, the defendants had no notice of the filing of the complaint with the OFCC.

*Telegraphers v. Railway Express Agency, supra,* 321 U.S. at 349, 64 S.Ct. 586. It is true that Franklin did pursue grievance procedures at the College but this cannot function to toll the limitations period. *Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). Nor can the OCR investigation be viewed as constituting sufficient notice. The College was not informed that such an investigation was under way until February 1979, one month before the summons and complaint were served. Therefore, the Court concludes that equitable tolling would be inappropriate in this case because it would tip the balance unfairly against the defendants.

*Conclusion*

The plaintiff in an employment discrimination suit, like any other kind of case, must assume the responsibility for satisfying the statutory and procedural requirements for instituting an action in federal court. In this case, however, the record does suggest that the plaintiff was misled, or at least confused, by letters that she received from the very agencies that were created to implement the federal laws prohibiting employment discrimination. In the words of the Second Circuit, "Title VII is rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer, yet its enforcement mechanisms are usually triggered by laymen." *Egelston v. State Univ. College at Geneseo, supra,* 535 F.2d at 754. Surely these agencies are familiar with the problems encountered by an individual who attempts to institute a Title VII action without the assistance of counsel. In light of these difficulties, and the time limitation traps into which an unwary plaintiff may fall, these agencies could redraft their standard letters to inform complainants that charges must be filed directly with the proper agency within a given time period. Merely providing a phone number to call in the event the complainant has further questions is not sufficient to alert the reader that additional steps must be taken to preserve the full panoply of federal statutory rights.

Although the plaintiff's delay may be attributed to reasonable, but misplaced, reliance on administrative assurances, the defendants in this case cannot be penalized by being subjected to an untimely suit. The defendants, who did not contribute to or bring about the delay, are entitled to rely on Title VII's statute of limitations and the policies of fairness and repose that it embodies. They would be unduly prejudiced by the amount of time that has elapsed since Franklin's reappointment was disapproved, for evidence and witnesses become harder to locate and memories grow dim. Title VII's limitations period may be tolled, but the tolling must be warranted by the equities of the case. In the instant action, tolling would be inequitable to the defendants who should not be forced to bear the burden of plaintiff's misguided journey through the administrative maze.

Accordingly, the defendants' motion for summary judgment is granted.

So ordered.