649 F.2d 823
 25 Fair Empl.Prac.Cas. 1397,
26 Empl. Prac. Dec. P 31,878
Jose G. TRUJILLO, Plaintiff-Appellant,
v.
The STATE OF COLORADO; The State Board of Community Colleges
and Occupational Study; Denver Area Council for
Community College; and The Community
College of Denver, Defendants-Appellees.
 No. 79-1435.
 United States Court of Appeals,
Tenth Circuit.
 Argued Sept. 16, 1980.
Decided May 28, 1981.
 
 Sander N. Karp of Karp & Goldstein, Denver, Colo., for plaintiff-appellant.
 Thomas V. Holland, Sp. Asst. Atty. Gen., Denver, Colo., for defendants-appellees.
 Before SETH, Chief Judge, LOGAN, Circuit Judge, and BOHANON, District Judge*.
 LOGAN, Circuit Judge.
 
 
 1
 Jose G. Trujillo appeals a district court order dismissing his action for declaratory relief, injunctive relief, and damages which was brought under the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981 and 1983. The principal issues on appeal are (1) whether the dismissal of a Title VII action previously brought by Trujillo against some of the defendants bars the instant suit under the doctrine of res judicata, and (2) whether Trujillo's acceptance of benefits under a conciliation agreement between defendant Community College of Denver and the Department of Health, Education, and Welfare Office of Civil Rights (HEW-OCR) bars the present action.
 
 
 2
 Trujillo, a Spanish surnamed citizen of the United States, was hired by defendant Community College of Denver (the college) in June 1973 to work in its veterans affairs program. In November 1973, Trujillo filed a charge of employment discrimination against the college with the Equal Employment Opportunity Commission (EEOC), alleging that the college had reduced his salary and had refused to grant him a raise because of his national origin. In an amended charge filed in December 1976, Trujillo alleged the college rejected him for employment in four positions applied for in 1976 most recently the position of assistant coordinator of veterans affairs because he was a Spanish surnamed American and in retaliation for his filing of the original charge. In May 1977, having received no notification of final determination from the EEOC, Trujillo filed a complaint with HEW-OCR pursuant to Exec. Order No. 11,246, 30 Fed.Reg. 12,319 (1965), reprinted in (1965) U.S.Code Cong. & Ad.News 4416, as amended by Exec.Order No. 11,478, 34 Fed.Reg. 12,985, reprinted in (1969) U.S.Code Cong. & Ad.News 2899-900, alleging essentially the same acts of discrimination set forth in his EEOC complaint, including the reduction of wages in 1973 and a discriminatory appointment of an Anglo to the position of assistant coordinator of veterans affairs. Shortly thereafter the EEOC issued a letter of determination, finding no evidence of retaliation or of discrimination with respect to wages or hiring practices; a right to sue letter was issued in June 1977.
 
 
 3
 In September 1977, Trujillo brought an action in federal court under Title VII, 42 U.S.C. § 2000e-5(f), alleging that the college refused to rehire him after his termination in June 1976 solely on the basis of his national origin. On December 30, 1977, the court dismissed Trujillo's complaint, principally for failure to include proper parties, with express leave to amend. When Trujillo did not amend his complaint it was finally dismissed on January 31, 1978, without an express statement of whether the dismissal was on the merits.
 
 
 4
 On March 15, 1978, HEW-OCR issued a letter finding that, by refusing to hire Trujillo for the position of assistant coordinator of veterans affairs, the college had discriminated against him because of his national origin; the letter expressly stated that Trujillo's other complaints of discrimination could not be substantiated. HEW-OCR negotiated a conciliation agreement with the college dated May 15, 1978, in which the college agreed to hire Trujillo as assistant coordinator of veterans affairs and to award him retroactive seniority and fringe benefits. Trujillo accepted employment in the position four days later.
 
 
 5
 Trujillo filed the present action in February 1979, alleging deprivation of rights secured by the Thirteenth and Fourteenth Amendments and 42 U.S.C. §§ 1981 and 1983. The district court granted summary judgment, relying both upon res judicata and Trujillo's acceptance of benefits as the exclusive beneficiary of the conciliation agreement.
 
 
 6
 * The trial court ruled that because Trujillo alleged no new substantial facts in the present action he was not entitled to raise theories of liability that should have and could have been raised in the prior Title VII proceeding.
 
 
 7
 A judgment on the merits in a prior suit is required to bar a second suit based on the same cause of action under the doctrine of res judicata. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5, 99 S.Ct. 645, 649 n.5, 58 L.Ed.2d 552 (1979). The doctrine of res judicata does not apply in this case; there was no judgment on the merits of Trujillo's claim in the earlier action. The first dismissal of Trujillo's 1977 action was with express leave to amend. The final dismissal after Trujillo's failure to amend was not an adjudication on the merits; it was rather a dismissal for failure to join necessary parties. Fed.R.Civ.P. 41(b) states that involuntary dismissals are considered to be on the merits, unless the court specifies otherwise, except dismissals for lack of jurisdiction, improper venue, or for failure to join a party needed for just adjudication.
 
 
 8
 A case factually close is Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 488 F.2d 75, 76 (5th Cir. 1973). There the district court dismissed the plaintiff's original complaint, with leave to amend within ten days, for want of allegations establishing diversity jurisdiction. The action was subsequently dismissed for failure to obey the court's order. Thereafter a second action was brought by Mann against Merrill Lynch on the same claims and the trial court ruled it was barred by the doctrine of res judicata. The Fifth Circuit reversed, holding the trial court's dismissal of the first action following Mann's failure to amend was not an adjudication on the merits but "merely (made) final the earlier dismissal, with leave to amend, for want of necessary jurisdictional allegations." Id. at 76.
 
 
 9
 We believe Mann correctly articulates the flaw in defendants' present argument:
 
 
 10
 "Had the District Judge intended what he wrote literally that the action was being dismissed because the March order had been 'disobeyed' he would have been guilty of an abuse of his Rule 41(b) discretion to dismiss. Dismissal of a case for disobedience of a court order is an exceedingly harsh sanction which should be imposed only in extreme cases, and then only after exploration of lesser sanctions Failure to amend a complaint after it has been dismissed with leave to amend is not such an extreme case of disobedience, if it is disobedience at all.
 
 
 11
 "Since the original action was dismissed basically because requisite jurisdiction allegations were missing, and not because Mann disobeyed the Court, that dismissal does not operate as an adjudication upon the merits."
 
 
 12
 Id.
 
 
 13
 We similarly conclude that Trujillo's Title VII action was dismissed for failure to join proper parties and not for disobedience of a court order. The dismissal, therefore, did not constitute an adjudication on the merits and did not render that action res judicata to Trujillo's present suit.
 
 II
 
 14
 We next consider whether Trujillo's acceptance of substantial benefits under the conciliation agreement between the college and HEW-OCR forecloses the instant suit. While Trujillo is not a party to the agreement and claims not to have approved its terms, he clearly is the sole beneficiary and has taken advantage of its provisions favorable to him. The agreement required the college to hire him as assistant coordinator, veterans' affairs by May 20, 1978, at a salary of $10,308 per school year, with seniority, pension and other fringe benefits retroactive to January 21, 1977. Trujillo accepted employment on May 19, 1978, apparently on those terms. His letter to the college director of personnel dated June 27, 1978, refers to the conciliation agreement and to the college's position that the agreement controls all financial aspects of his employment. While Trujillo's letter indicates his belief that the HEW-OCR officials did not intend Trujillo to be precluded from the benefits of his education, experience and military credits in salary increase evaluations, it does not repudiate the agreement.
 
 
 15
 The conciliation agreement makes no reference to instances of discrimination other than the hiring of the assistant coordinator of veterans' affairs. But the report to Trujillo, which formed the basis of the negotiated agreement, specifically treated each of Trujillo's other allegations of discrimination and declared that they could not be substantiated. That report recited the intention of HEW-OCR to arrange a conciliation conference with the college to discuss a satisfactory resolution, and acknowledged Trujillo's suggestions for remedies.
 
 
 16
 Trujillo, of course, is not required to exhaust remedies under the conciliation agreement before bringing an action under 42 U.S.C. § 1981. Taylor v. Safeway Stores, Inc., 524 F.2d 263, 274 (10th Cir. 1975). See also Johnson v. Railway Express Agency, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). But we do not construe the complaint as asserting that the college or other defendants violated the conciliation agreement. Rather, it alleges discriminatory treatment in the same five incidents complained of to HEW-OCR, including the hiring for the job of assistant coordinator of veterans' affairs.
 
 
 17
 The EEOC and HEW-OCR were created to make preliminary investigations and attempt settlements. Only if they are "unable to secure from the respondent a conciliation agreement acceptable to the Commission" is suit brought or a right to sue letter issued to the complaining party. 42 U.S.C. § 2000e-5(f) (1). See also id. § 2000e-4; Exec.Order No. 11,478, 34 Fed.Reg. 12,985 reprinted in (1969) U.S.Code Cong. & Ad.News 2899-900. "Cooperation and voluntary compliance were selected as the preferred means for achieving this goal (eliminating discriminatory employment practices)." Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974).
 
 
 18
 In Gardner-Denver, the Supreme Court concluded that an individual does not forfeit his private cause of action under Title VII if he initially pursues his grievance to final arbitration under the nondiscrimination clause of a collective bargaining agreement. The Court reasoned that the relationship between the arbitration forum and the judicial forum entertaining the Title VII action is complementary; the respective policies of each forum are promoted by independent consideration of the claim. 415 U.S. at 50-51, 94 S.Ct. at 1020-21: By submitting a grievance to arbitration, an employee is pursuing a contract right that flows from the collective bargaining agreement; the rights asserted in a Title VII action, on the other hand, flow from an act of Congress independent of the labor-management bargaining process and are not subject to labor arbitration. The instant situation is different, however; here a government agency negotiated a conciliation agreement, a voluntary settlement of the alleged violation of the statutory rights of Trujillo. The opinion in Gardner-Denver recognizes this difference when it says "presumably an employee may waive his cause of action under Title VII as a part of a voluntary settlement." 415 U.S. at 52, 94 S.Ct. at 1021. See also General Tel. Co. v. EEOC, 446 U.S. 318, 333 n.15, 100 S.Ct. 1698, 1708 n.15, 64 L.Ed.2d 319 (1980).
 
 
 19
 The important public policy concerns that support voluntary settlements would be thwarted if Trujillo could have his cake and eat it too, so to speak if he could accept the benefits of the conciliation agreement giving him a specific employment position at a specified salary with retroactive seniority and fringe benefits while retaining the right to sue on all his claims the negotiated agreement did not resolve in his favor. No employer would agree to conciliation in such a "no win" situation, and the policy of the law seeking cooperation and negotiated settlements would fail. It seems imperative to require Trujillo to accept what HEW-OCR has negotiated for him or to reject it as insufficient and sue on his claims. See General Tel. Co. v. EEOC, 446 U.S. at 326, 100 S.Ct. at 1704. "(T)he aggrieved person may bring his own action if the agency has reached a conciliation or settlement agreement with the respondent that the party finds unsatisfactory."
 
 
 20
 The Supreme Court in Gardner-Denver, referring to an employee's waiver of his cause of action for discriminatory treatment by settlement, said, "In determining the effectiveness of any such waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing." 415 U.S. at 52 n.15, 94 S.Ct. at 1021. Trujillo was not a party to the conciliation agreement, but he was its sole beneficiary. He accepted its benefits. We cannot determine from the record whether at the time of his acceptance of the benefits he knew that it was in settlement of all his discrimination claims. Since he is here suing on those claims, it appears he may not have understood it was a voluntary settlement.
 
 
 21
 We, therefore, remand this case to the district court for a hearing to determine whether, at the time Trujillo accepted the benefits of the conciliation agreement, he understood it was in full settlement of all claims of discrimination he complained of to HEW-OCR. If he did not, he may choose either to accept the conciliation agreement as full settlement of his claims, or forfeit the benefits of that bargain and maintain the instant suit. It is so ordered.
 
 
 
 *
 Honorable Luther L. Bohanon of the United States District Court for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation