Lexine PERDUE, Appellant,

v.

ROY STONE TRANSFER CORPORA-
TION; Lonnie Hodges; Ben
Koontz; Appellees.

No. 81–2171.

United States Court of Appeals,
Fourth Circuit.

Argued March 31, 1982.

Decided Oct. 5, 1982.

Robert W. Goodlatte, Roanoke, Va. (Don-
ald W. Huffman, Bird, Kinder & Huffman,
Roanoke, Va., on brief), for appellant.

Thomas T. Lawson, Samuel G. Wilson,
Roanoke, Va. (Woods, Rogers, Muse, Walk-
er & Thornton, Roanoke, Va., on brief), for
appellees.

Before WINTER, Chief Judge, and
BUTZNER and WIDENER, Circuit Judges.

HARRISON L. WINTER, Chief Judge:

The district court ruled that it was with-
out jurisdiction to entertain plaintiff's em-
ployment discrimination suit under Title
VII because plaintiff has not been issued a
"right to sue" letter by EEOC. Plaintiff
alleged that defendant entered into a settle-
ment agreement with her and with EEOC
but did not perform or tender performance
of any part of the agreement. Despite
defendants' alleged total breach, EEOC in-
formed plaintiff that its procedures do not
allow for the issuance of a "right to sue"
letter in cases where the parties have en-
tered into a settlement agreement.

On the basis of the facts alleged in the
complaint and in plaintiff's reply to the
motion to dismiss, we hold that issuance or
receipt of a "right to sue" notice was not a
prerequisite to the district court's jurisdic-
tion under Title VII to hear and decide the
case. We therefore reverse and remand for
further proceedings.

I.

In June 1979, plaintiff allegedly applied
to defendant Roy Stone Transfer Corpora-

tion (the Company) for admission to its truck-driver training program, successful completion of which normally leads to employment by the Company as a truck driver. The Company declined to accept her application or to consider her for the program. This refusal was based solely on the fact that plaintiff is female.[1]

Within 180 days of these events, plaintiff filed charges of sex discrimination in employment with EEOC. EEOC processed her charge and ultimately arranged a settlement agreement whereby, upon plaintiff's agreement not to sue under Title VII, the Company promised to mail her an application form for admission to its training school and to admit her if she met the criteria for admission. The Company further agreed to notify plaintiff and EEOC in writing of her acceptance or rejection by the training school.

Plaintiff filed her application to the training school on February 8, 1980. When, on May 7, 1980, she had heard nothing about her application, she requested EEOC to issue a "right to sue" letter. EEOC replied on July 17, 1980, advising that it contacted the employer on June 23 and was told that the employer had discontinued its truck-driver training program. EEOC assured plaintiff that it would continue to monitor the situation. Again on August 21, 1980, plaintiff requested that EEOC issue a "right to sue" notice. Again EEOC declined but promised to make further inquiries.

In February, 1981, evidence came to plaintiff's attention that the Company had not in fact discontinued the program. On March 10, 1981, her lawyer reported these facts to EEOC and asked for a "right to sue" letter. EEOC's written reply of March 31, 1981, stated that its procedures would not permit it to issue a "right to sue" letter following a negotiated settlement. It added, however, that "[i]f you believe that [the Company] has breached the agreement, you do not need a right to sue notice to pursue such a breach in court."

Suit was filed on June 4, 1981, within ninety days of the receipt of EEOC's last letter. The complaint pleaded the settlement agreement to show exhaustion of administrative remedies and alleged that the Company's breach of the agreement "compounded and aggravated" the underlying discrimination. Plaintiff's claim for relief, however, rested on the discriminatory refusal to admit her to the training program, rather than on breach of the settlement agreement.[2]

## II.

Title VII creates a private right of action for employment discrimination and vests the federal courts with jurisdiction over such actions. 42 U.S.C. § 2000e–5(f)(1) (1976) (right of action); *id.* (f)(3) (jurisdiction). The private right of action is defined by the following language:

> If a charge filed with the Commission pursuant to subsection (b) of this section, is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . , the Com-

---

1. Defendants allegedly told plaintiff that the wives of male drivers would not permit her to drive with their husbands; that, if admitted to the training program, plaintiff would have to be segregated from the males; and that, in any event, the Company would refuse to employ plaintiff as a truck driver even if she completed the program. When plaintiff protested against this discriminatory treatment, a representative of the Company allegedly told her: "Don't worry, I can find another reason to reject you."

2. We thus have no occasion to consider whether plaintiff could properly have invoked federal jurisdiction to enforce the settlement agreement. *Cf. Fairfax Countywide Citizens Assoc. v. County of Fairfax,* 571 F.2d 1299 (4 Cir.)

(holding that federal jurisdiction was lacking to enforce a private settlement in a civil rights case where the settlement was not incorporated in a federal judicial order), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978). *See generally Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 & n.2 (5 Cir. 1981); *Jersey Cent. P. & L. Co. v. Local 327, IBEW,* 508 F.2d 687, 701 (3 Cir. 1975), *vacated and remanded,* 425 U.S. 987, 96 S.Ct. 2196, 48 L.Ed.2d 812 (1976); *EEOC v. Contour Chair Lounge Co.,* 457 F.Supp. 393, 395 (E.D.Mo. 1978), *aff'd in part, rev'd in part on other grounds and remanded,* 596 F.2d 809 (8 Cir. 1979).

mission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge ... by the person claiming to be aggrieved ....

*Id.* § 2000e–5(f)(1).[3]

On at least two occasions, the Supreme Court has referred to statutory notice of the right to sue as a jurisdictional prerequisite to private enforcement. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); *see also United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4 Cir. 1979). On close analysis, however, neither of these cases requires us to conclude that actual issuance of a "right to sue" letter by the EEOC and receipt of such notice by a charging party is a sine qua non of federal jurisdiction under § 2000e–5(f)(1). Both in *McDonnell Douglas* and in *Alexander,* the Court referred to the timely filing of administrative charges and receipt of a "right to sue" letter as jurisdictional prerequisites only by way of rejecting arguments which would have imposed additional jurisdictional preconditions.[4] Section 2000e–5(f)(1) *requires* EEOC to issue a "right to sue" notice

if, within 180 days after a charge is brought, the Commission has neither filed suit in its own name nor achieved a private settlement. Thus, a charging party is entitled to such notice if the appropriate conditions exist. The Commission's failure actually to issue the notice cannot defeat the complainant's statutory right to sue in the district court, for "[a] Title VII complainant is not charged with the commission's failure to perform its statutory duties." *Russell v. American Tobacco Co.,* 528 F.2d 357, 365 (4 Cir. 1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976).[5] In our view, it is entitlement to a "right to sue" notice, rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts under § 2000e–5(f)(1). Nothing in *McDonnell Douglas* or *Alexander* precludes this rule, which is simply an application of the maxim that equity regards as done that which ought to have been done.

In effect, the district court's reading of § 2000e–5(f)(1) was that a claimant forever loses his entitlement to a "right to sue" notice, and hence his right to seek redress in federal court, when he enters into a settlement agreement, even if the employer who purportedly settled never had any intention of honoring the agreement. The plain language of the statute does not command this inequity; we will impose such a harsh result only if the policies embodied in the statute clearly so require.

**3.** In conformity with the statutory directive, EEOC usually notifies a charging party of any action the agency undertakes and, in the absence of agency action, of the party's right to bring suit in the district court. *See* 29 C.F.R. § 1601.28 (1981). Hence the name "right to sue" notice.

**4.** In *McDonnell Douglas,* the Court held that the absence of a finding of reasonable cause by EEOC does not bar a private action under Title VII. 411 U.S. at 798–99, 93 S.Ct. at 1822–23. *Alexander* held that arbitration of a discrimination claim pursuant to a collective bargaining agreement does not preclude the complaining employee from suing on the same claim under Title VII. 415 U.S. at 47–60, 94 S.Ct. at 1019–1025. Thus, in both cases the Court rejected restrictions on a Title VII claimant's access to federal court not unlike the restriction imposed by the district court in this case.

**5.** The argument in the text focuses on § 2000e–5(f)(1) as it bears on the individual right to sue for employment discrimination. It deserves emphasis, however, that the issue in this case directly implicates the role of the federal courts in the congressional scheme for eliminating discriminatory employment practices. As the Supreme Court noted in *Alexander,* Congress gave the federal courts "plenary powers", 415 U.S. at 45, 94 S.Ct. at 1018, and "final responsibility" for enforcement of Title VII, *id.* at 56, 94 S.Ct. at 1023. It is difficult to believe that Congress intended to permit an employer to nullify the federal courts' statutorily mandated enforcement role by the simple expedient of signing and breaking a settlement agreement. Equally implausible is the notion that EEOC may oust the courts of jurisdiction by refusing to issue a "right to sue" notice in such a case.

Three policies appear to shape the notice requirement of the statute. First, by forestalling litigation until EEOC has had time to explore the possibility of conciliation, the notice requirement reflects Title VII's emphasis on private dispute-resolution. Second, the notice requirement serves to prevent concurrent proceedings in the EEOC and the courts. *See* H.R.Rep.No.238, 92 Cong., 1st Sess., *reprinted in* [1972] U.S. Code Cong. & Ad.News 2137, 2148. Third, the issuance of a "right to sue" notice initiates the running of the statute of limitations for private actions. We think that none of these statutory purposes suggests that § 2000e–5(f)(1) should be read as barring a private suit where the EEOC refuses to issue a "right to sue" letter in view of a private settlement which the putative defendant has allegedly flouted.

The district court was surely correct that it would frustrate the policy of private conciliation to permit a claimant to sue for discrimination in spite of a settlement agreement where the other party has performed or tendered performance. *See, e.g., Trujillo v. Colorado,* 649 F.2d 823, 826–27 (10 Cir. 1981). But this concern is wholly misplaced where, as here, it is alleged that the defendant has withheld the performance which induced the plaintiff's promise to forego suit. If an employer could defeat federal judicial remedies simply by with-

holding performance of a settlement agreement, complaining parties would have little incentive to settle Title VII disputes by private agreement. Thus, the policy of private dispute-resolution, far from supporting the district court's ruling, militates strongly against it.

The policy against concurrent judicial and administrative proceedings has no application where the EEOC "closes" a case because of a settlement agreement and declines to reopen the matter when the agreement is allegedly breached. If a purported settlement completely fails and EEOC declares that its role in the matter is at an end, a claimant who takes his case to federal court in no sense impinges on the Commission's or the employer's interest in administrative process.[6]

The function of marking the beginning of the limitations period has to do with *when,* not whether, a party is entitled to notice of the right to sue. The doctrine of laches should be applied to prevent a claimant from prejudicing an employer by resurrecting a stale discrimination claim after apparently acquiescing in the employer's breach of a settlement. But where the claimant awaits performance for a reasonable period, notifies the EEOC of nonperformance, and brings suit promptly after EEOC washes its hands of the matter, the defendant's interest in repose has not been compromised.[7]

---

6. It might be argued that plaintiff should have sued EEOC to vindicate her entitlement to notice. To require such a course, however, would unduly complicate and protract Title VII litigation. Indeed, unless EEOC and the employer could be joined in a single lawsuit, such a requirement might prevent a claimant from suing on his underlying claim within the applicable limitations period. *Cf. Franklin v. Herbert Lehman College,* 508 F.Supp. 945, 952 (S.D.N.Y.1981) (recognizing limitations defense even though plaintiff's delay in suing was partly attributable to erroneous advice by an administrative agency).

7. Under our decision that entitlement to a "right to sue" letter satisfies the jurisdictional requirement of § 2000e–5(f)(1), it will be necessary for the district court to determine when plaintiff became so entitled for purposes of measuring the ninety-day period during which suit could properly be brought under the statute. The Fifth Circuit confronted a very simi-

lar issue in *Crawford v. Western Elec. Co.,* 614 F.2d 1300 (5 Cir. 1980), in deciding what manner of notice suffices to commence the running of the statutory limitations period. The court held:

> [I]f the plaintiff is notified (1) that conciliation efforts on his or her behalf have failed and (2) that the EEOC intends not to sue, the respondent plaintiff has then received notice that the administrative process is at an end. The 90-day period begins to run at that point.

*Id.* at 1307. We think that the analysis employed in *Crawford* is equally applicable here. Plaintiff's suit is timely if she sued within ninety days of acquiring knowledge or reason to know that the Company refused to abide by the settlement agreement *and* that EEOC would take no further action on her behalf. On the basis of plaintiff's allegations, it would appear that she acquired the requisite information only upon receipt of EEOC's letter of March 31, 1981. If so, that letter was the functional

Thus, the policies undergirding the statutory "right to sue" notice indicate that the charging party should be deemed entitled to such notice when the employer neither performs nor tenders performance of a settlement agreement. Plaintiff's allegations of such a breach and of the exhaustion of administrative remedies, if true, establish her entitlement to such notice and, hence, properly invoke the jurisdiction of the district court under § 2000e–5(f)(1).

Although this case is novel on its facts, our decision is consistent with established law in this circuit and elsewhere. In *Johnson v. Seaboard Air Line R. R. Co.*, 405 F.2d 645 (4 Cir. 1968), *cert. denied, Pilot Freight Carriers, Inc. v. Walker*, 394 U.S. 918, 89 S.Ct. 1189, 22 L.Ed.2d 451 (1969), we held that EEOC's failure to undertake conciliation of a claim was not a jurisdictional prerequisite to a suit by a claimant who had been issued a "right to sue" letter. We adhered to that rule in *Russell v. American Tobacco Co.*, 528 F.2d at 365, where we held that a complainant could sue even though EEOC failed to notify the respondent union of the charges and did not attempt conciliation with it. These cases are but recognition of the basic principle that inaction by EEOC may not be used to frustrate a claimant's efforts to vindicate his rights in the district court.

The same principle controls this case. EEOC here interpreted its regulations as precluding the issuance of a "right to sue" letter after the signing of a settlement agreement, notwithstanding the allegation that the agreement was a sham on the employer's part. Even if that construction of agency regulations is tenable, it does not defeat the jurisdiction of the federal courts over plaintiff's Title VII claim.

### III.

We reverse the judgment of the district court and remand the case for further proceedings. We rest our decision on plaintiff's untested allegation that the Company was guilty of a total breach of the settlement agreement. On remand, plaintiff must prove this jurisdictional fact. If the district court so chooses, it may conduct a preliminary hearing to determine whether indeed the facts establish jurisdiction before proceeding to the merits.[8]

REVERSED AND REMANDED.

WIDENER, Circuit Judge, dissenting:

I respectfully dissent.

While I agree with the majority that under appropriate circumstances the plaintiff may bring an action on her underlying Title VII claim, I must dissent from the majority's conclusion that the plaintiff does not need a right to sue letter from the EEOC in order to proceed with her case. I would thus affirm the district court's dismissal of the case for lack of jurisdiction, although for somewhat different reasons.

The settlement agreement before us is an executory accord which bars further proceedings on the claim, assuming that each party fulfills the accord. 6 *Corbin on Contracts* §§ 1268–1269 (1962). See 42 U.S.C. § 2000e–5(f)(1); *Trujillo v. Colorado*, 649 F.2d 823, 826–27 (10th Cir. 1981). If there be a material breach of executory accord, such as is alleged in this case, the breaching party may no longer assert the existence of the accord as a bar to the suit on the underlying action. *Brown v. Spofford*, 95 U.S. 474, 483–484, 24 L.Ed. 508 (1877). Thus, the non-breaching party may bring suit either to enforce the accord or on the underlying action itself. *DeVilliers v. Atlas Corp.*, 360 F.2d 292, 295 (10th Cir. 1966); *Corbin*, supra §§ 1271–1275. *Brown* specif-

equivalent of a "right to sue" notice and marked the beginning of the ninety-day statutory period.

8. In addition to separating the jurisdictional issue from the merits, a preliminary hearing would also bifurcate those factual issues which are triable to a jury from those which are not. Plaintiff has demanded a jury trial, but jurisdic-

tional facts are normally for the court, not the jury. See *Gilbert v. David*, 235 U.S. 561, 568, 35 S.Ct. 164, 166, 59 L.Ed. 360 (1915); *Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co.*, 469 F.2d 416, 418 (5 Cir. 1972); 1 *Moore's Federal Practice* ¶ 0.74[1], at 707.5 (2d ed. 1948).

ically held that the suit on the underlying cause of action could proceed absent performance of the executory accord.

I believe the majority correctly premises its opinion " . . . on plaintiff's untested allegation that the company was guilty of a total breach of the settlement agreement." I do not agree with the majority, however, when it concludes that " . . . it is entitlement to a right to sue notice rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts under § 2000e–5(f)(1)." This interpretation of the statute effectively reads EEOC out of a part of its role in the administration of the statute, not to mention the fact that it is contrary to the statements of the Supreme Court in *McDonnell Douglas* and *Alexander,* and our own holding in *United Black Firefighters,* although that last holding was not necessarily phrased as a want of jurisdiction.

A literal reading of § (f)(1) would seem to justify the withholding of the right to sue letter by the EEOC, for the EEOC must send the right to sue letter if it " . . . has not entered into a conciliation agreement to which the person aggrieved is a party. . . ." This was the position taken by the district court as well as EEOC, and, in a case in which the settlement agreement replaced the cause of action, that position would doubtless be justified. But, as I have mentioned, this is an executory accord, and under *Brown* the breaching party may not assert the existence of the accord as a bar to the suit on the underlying action if it has been breached. I do not think that the statute contemplates that Title VII settlements in the form of executory accords should be treated any differently than the *Brown* decision indicates. The situation before us is one which is not covered by a literal reading of the statute.

There is no reason why the language of the Supreme Court in *McDonnell Douglas* and *Alexander* cannot be complied with, as well as the statute, § (f)(1), construed reasonably, by requiring the EEOC to issue its right to sue letter upon the allegation of a total breach of the settlement agreement. Plaintiff had available an effective remedy for procuring her right to sue letter. She could have made the EEOC a party to the proceedings, and the court thus could have required the EEOC to issue its right to sue letter. Plaintiff's failure to make the EEOC a party to the case must justify the dismissal by the district court for want of jurisdiction because of the absence of the right to sue letter. The absence of the EEOC in the suit means that "complete relief cannot be afforded among those already parties." FRCP 19(a).

The course I advocate is not overly technical nor should it provide an unnecessary stumbling block or procedural difficulty for a plaintiff who claims a settlement agreement has been breached. Moreover, it is justified and indeed required as I will briefly outline below.

In our case, the facts surrounding the settlement agreement, as they appear to us from this record, seem to be relatively straightforward, and any dispute between the parties as to those facts would seem to be between the plaintiff and the defendant. But that may not always be the case, and is not necessarily true here. The meaning of settlement agreements may not always be clear from the face of the agreement, or there may be claims of fraud, mistake, etc. What was said and by whom, prior to and contemporaneously with the execution of the agreement, among the parties to the agreement, the plaintiff, the EEOC, and the defendant, may often be admissible in evidence. For example, whether an agreement is an executory accord or an accord and satisfaction may well be subject to parol proof. In those cases the EEOC should obviously be a party, and its position in the matter is bound to have weight.[1] Since we cannot anticipate what facts will come out when everything concerning this settlement

---

1. *Lamar v. EEOC,* 25 EPD, ¶ 31,641 (N.D.Ill. 1981), is an illustration of the problems which may arise. In that case the plaintiff alleged that she had entered into a settlement agreement because EEOC had wrongly advised her that her only alternative to accepting the employer's settlement offer was to receive nothing.

agreement is explored, I think the EEOC is an indispensable party to the action under FRCP 19.[2] It is a party to the agreement. Its obligation is to foster such agreements. It has the sole right to issue the jurisdictional right to sue letter. Without the right to sue letter the case should not proceed. These reasons alone satisfy the requirement that it be made a party to the case. To repeat, in its absence, complete relief cannot be afforded those already parties. FRCP 19(a).

The above reasons aside, there is another flaw in the majority's reasoning in treating the "total breach of the settlement agreement" as the "jurisdictional fact" (Sl. op. p. 1095) rather than treating the right to sue letter as such.

Under the principles of *Osborn v. Bank of the United States,* 9 Wheat 738, 6 L.Ed. 204 (1824), *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), and *Smith v. Sperling,* 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957), when there are facts which go to the jurisdiction of the court as well as to the merits of the case, the court should proceed to the merits. Otherwise, many federal question claims would be dismissed for want of jurisdiction. *Osborn* has set forth the rule in a statement which so far as I know has not been questioned:

> "There is scarcely any case, every part of which depends on the Constitution, laws, or treaties of the United States. The questions, whether the fact alleged as the foundation of the action, be real or fictitious; whether the conduct of the plaintiff has been such as to entitle him to maintain his action; *whether his right is barred; whether he has received satisfaction, or has in any manner released his claims,* are questions, some or all of which may occur in almost every case; and if their existence be sufficient to arrest the jurisdiction of the court, words which

seem to be intended to be as extensive as the Constitution, laws, and treaties of the Union, which seem designed to give the courts of the government the construction of all of its acts, so far as they affect the rights of individuals, would be reduced to almost nothing." p. 820. (Italics added).

Along the same line, *Bell v. Hood* holds that where there is a question as to whether or not a federal cause of action has been stated and the case is dismissed, the dismissal should be on the merits and not for want of jurisdiction. Of like import is *Smith v. Sperling,* a case with facts closely akin to those existing here. The diversity jurisdiction of the court depended on the existence of fraud because of a question of realignment of parties. The case was dismissed by the district court for want of jurisdiction because it found fraud did not exist, and its decision was affirmed by the court of appeals. The decision was reversed because the issue of the existence of fraud went both to the jurisdiction of the court as well as to the merits of the case. The Supreme Court held that the case must proceed to trial on the merits instead of being dismissed for want of jurisdiction. It described the trial of the fraud issue as a preliminary matter going to the court's jurisdiction as "... a time consuming, wasteful exercise of energy on a preliminary issue in the case." 354 U.S. at p. 95, 77 S.Ct. at 1114. In the case before us, it is at once apparent that if the settlement agreement has not been breached that is a defense to the merits of the action, and it should not be tried as a preliminary matter going to the jurisdiction of the court. *Smith* is precisely on point on this question.

I thus think that with an available opportunity to obtain the right to sue letter the majority in its decision unnecessarily contravenes the language of the Supreme

---

**2.** If EEOC were held to be an improper party to the case, thus making relief unavailable by that method, then mandamus would certainly lie under 28 U.S.C. § 1361 "... to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" because the plaintiff should be entitled to her right to sue letter on an allegation of a breach of the settlement agreement. The duty of EEOC to issue the letter is ministerial and other relief would be unavailable. See *Cook v. Arentzen,* 582 F.2d 870, 876 (4th Cir. 1978).

Court in *McDonnell Douglas* and *Alexander* as well as *Osborn, Bell,* and *Smith.*

In conclusion, I should say that the question of whether or not a jury is required is not before us, so footnote 8 to the majority opinion is bound to be dicta. So far as the opinion may intimate, however, that the breach of the settlement agreement is not triable to a jury, I do not agree. If the validity of the settlement agreement is a question properly to be tried to a jury in a trial of the underlying cause of action on its merits, then the fact that the same matter may also go to the jurisdiction of the court does not diminish the right of the parties to trial by jury as to that issue. Again, such a holding is contrary to the principles of *Osborn, Bell,* and *Smith,* and would enable parties to avoid trial by jury in many federal question claims by simply trying to the court as a preliminary matter the fact common to both the question of jurisdiction and the merits.

