Martha WATKINS and Shirley D. McCurry, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

MILLIKEN & COMPANY, Defendant;

and

Lucy R. PACE, on behalf of herself and all others similarly situated, Plaintiff,

v.

MILLIKEN & COMPANY, Defendant.

Nos. SH–C–84–122, SH–C–84–167.

United States District Court, W.D. North Carolina, Shelby Division.

Sept. 19, 1984.

---

Whalen, Hay, Cash & Wolcott by J. Patrick Whalen, Jr., Asheville, N.C., for plaintiffs in both cases.

Pisgah Legal Services, Inc. by Barry L. Master, Asheville, N.C., for plaintiff in no. 122.

Hamrick, Bowen, Nanney & Dalton by Walter H. Dalton, Rutherfordton, N.C., and

Thompson, Mann & Hutson by John P. Mann, E. Scott Smith, M. Lee Daniels, Jr., Greenville, S.C., for defendants in both cases.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, District Judge.

In compliance with an order of this Court dated June 26, 1984 an evidentiary hearing was conducted in Rutherfordton on August 6, 1984 upon the motions of Defendant Milliken & Company to dismiss and strike certain allegations and causes of action from the complaints filed by the Plaintiffs Watkins and McCurry, SH–C–84–122 and Plaintiff Pace, SH–C–84–167. The cases were consolidated for the purpose of the hearing since they contain similar factual and legal issues and the parties are represented by the same counsel.

Plaintiffs Watkins and McCurry filed their action against Defendant Milliken on April 20, 1984 seeking individual and class relief under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. Sections 2000e—2000e-16 (Title VII), and the Age Discrimination in Employment Act of ]967, as amended, 29 U.S.C.A. Sections 621–634 (ADEA). The Title VII claims were brought as class actions under Rule 23, Federal Rules of Civil Procedure and charged Milliken with discriminating against Plaintiffs and the class they seek to represent on the basis of sex and their national origin. The ADEA claims are brought under Rule 23 as class actions.

The Defendant moved to dismiss and to strike the Title VII claims, both individual and class, under Rules 12(b)(1), (6) and (f), Federal Rules of Civil Procedure, for the reason that the complaint did not allege that either of the Plaintiffs had filed charges of sex or national origin discrimination with the Equal Employment Opportunity Commission (EEOC) nor received notices of right to sue from EEOC, that the Defendant had not been notified of such claims, and that EEOC had neither investigated nor attempted to conciliate the claims. Milliken contends that the Court lacked jurisdiction over the Title VII claims, they fail to state a claim upon which relief can be granted and they should be striken from the complaint. The Defendant also moved to dismiss and strike the Plaintiffs' claim under ADEA to the extent that they seek to state a Rule 23 class action contending that Congress, by incorporating into the ADEA the procedures for "representative actions" found in section 16(b) of the Fair Labor Standards Act, as amended, 29 U.S.C.A. Section 216(b) (FLSA), rejected the "notice" based procedures of Rule 23. In addition the Defendant moved to dismiss and strike the Plaintiffs' state law claims of breach of contract as not properly pendent to any federal claim, claiming both this Court's lack of authority to entertain such claims as well as the propriety of the Court's entertaining such claims founded upon a theory having no clear support under North Carolina law.

On May 18, 1984, the Plaintiff Pace filed both a motion to intervene in the Watkins and McCurry action as well as a separate action, SH–C–84–167. Pace's complaint raises individual and class claims under Title VII and ADEA, as well as an individual, pendent, state law contract claim. Pace raises no sex discrimination claim, but seeks individual and class relief for national origin discrimination under Title VII.

The Defendant moved to dismiss and strike the Title VII claim, the Rule 23 ADEA claim, and the pendent contract claim from the Pace complaint for the same reasons set forth in the Watkins and McCurry action.

The Plaintiffs Watkins, McCurry and Pace are all represented by the same counsel and have opposed the motions to dismiss and strike filed by the Defendant. With reference to the Title VII claims, the Plaintiffs contend that they attempted to file charges of sex and reverse national origin discrimination with EEOC but were effectively prevented from doing so by representatives of EEOC who would only accept age discrimination charges from them. With regard to the Rule 23 ADEA claims,

the Plaintiffs concede that Rule 23 is inapplicable to actions brought under ADEA but contend that Section 16(b) of FLSA permits this Court to: (1) direct the Defendant to provide names and addresses of potential class members; (2) certify a class, and (3) provide notice to all potential class members of their right to "opt in" to the class action. As to the state law claims the Plaintiffs contend that this Court has the power to entertain the breach of contract claims as pendent to the federal claims and that there is no good reason for it not to do so.

The Court heard oral arguments on the Defendant's motions to dismiss and strike and there developed material factual differences between the parties concerning the role played by EEOC in receiving and processing the alleged claims of sex and national origin discrimination. The contents of the affidavits and documents offered led the Court to order an evidentiary hearing limited to the question whether Plaintiffs' failures to file charges of sex and national origin discrimination, and to receive statutory notices of right to sue thereon, are, under the circumstances herein, excused by considerations of "waiver, estoppel, or equitable tolling," as set forth in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) and *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 104 S.Ct. 1723, 80 L.Ed.2d. 196 (1984). After conducting such hearing on August 6, 1984 the Court now enters its findings and conclusions.

The Plaintiffs Martha Watkins, Shirley D. McCurry and Lucy R. Pace are all native born, white American females and were employed by the Defendant Milliken at its Hatch Mill plant in Columbus, North Carolina. Plaintiff Watkins was discharged from such employment on April 26, 1982, at the age of fifty-eight (58). She contends that she was discharged because of her age, sex and national origin. Plaintiff McCurry was discharged from Milliken's employment on June 23, 1982 at the age of forty-eight (48) and contends that such discharge was because of her age, sex and national origin. The Plaintiff Pace was discharged on May 18, 1982 and alleges that her age and national origin were the real reasons for such discharge.

The Plaintiff Watkins first contacted EEOC by letter dated May 26, 1982 addressed to the Charlotte office and received there on May 28, 1982. She stated in the letter that Milliken was contending that she was fired for misconduct and insubordination but "I have reason to believe my job was given to a young Cambodian boy named Lor Lee. I am 58 years old." EEOC personnel treated the complaint as an age discrimination charge. Mrs. Watkins visited the office in person on June 17, 1982 and entered upon what EEOC calls its "intake" process. The first step of this procedure requires the complaining party to fill out an "Intake Questionnaire" without assistance from EEOC personnel. In response to the question in the form as to "what action was taken against you that you believe to be discriminatory" she stated, "I believe I was fired because of my age." The questionnaire provided her an opportunity to identify the cause of her discharge, be it race, sex, religion, national origin, or other discrimination, and to so indicate by checking the appropriate box or boxes on the form. She admitted that she did not check any of the boxes but wrote below the boxes, "I believe I was fired because of my age."

The next step in her "intake" process was an interview with Tony L. Caulder, Intake Equal Opportunity Specialist to whom her complaint had been assigned. He had before him her letter of May 26, 1982 and the questionnaire which she had just finished. Mr. Caulder went through the EEOC process of "pre-charge counselling" in which he explained to her what kinds of employment discrimination were prohibited by Title VII. Mrs. Watkins did not deny that she was told by Mr. Caulder that the EEOC had authority to accept and investigate charges of national origin discrimination. She testified and set forth in her affidavit filed with the Court that during the interview with Mr. Caulder she told him that she had been replaced by a young

Cambodian male, that Milliken was replacing many employees with Cambodians because she believed the government was subsidizing the Cambodians' pay and that she believed it was wrong for Milliken to take a woman's job and give it to a man. She testified that Mr. Caulder responded to the effect that EEOC could not help her and the others concerning the Cambodians taking people's jobs but that they would try to help if her job was taken because of her age or sex.

Mr. Caulder testified at the hearing that he took more than three pages of notes during the intake interview and the notes indicate that Mrs. Watkins told him that another employee told her that she had been replaced by a Cambodian, named Lor Lee approximately 30 years old; that he had worked in her department while she was there; that Mr. Lee is a bit dark in color and that Lucy Pace was replaced by a female Cambodian, name unknown. He denied telling Mrs. Watkins or any other person that the EEOC could not help concerning the "Cambodians taking people's jobs," stating that he had never made any such statement to any charging or complaining party. After the interview Mr. Caulder drafted a formal charge of discrimination for Mrs. Watkins identifying both age and sex discrimination and presented it to her for her examination. She was invited to make any changes, corrections or additions but she made none. Mrs. Watkins does not contend that she made any effort to change the charge and states that she signed and swore to the paper writing that day while in the office.

Mrs. Watkins testified that about seven or eight months later she received a telephone call from a person who identified himself as William H. Convey, Jr., EEOC investigator to whom the charge had been assigned. She states that during the conversation Mr. Convey told her in effect that EEOC could not really help her with the sex discrimination charge but that if she would drop that charge they would be able to help her with the age discrimination charge. Mr. Convey's account of the conversation differs sharply. His notes indicate that after a discussion with her she stated that she thought age was the primary reason for the action taken against her. Based upon the conversation and her statement he said it was decided to amend sex out of the charge. He advised Mrs. Watkins that a new charge would be typed and mailed to her for review, date and signature. Mr. Convey testified that he did not tell Mrs. Watkins that the EEOC could not help her with the sex charge nor did he use any words to that effect. That the decision to amend-out sex discrimination was mutually agreed upon, that she made no effort to amend-in any other charge such as national origin and that it is a normal procedure, in conversations with charging parties, both to amend-in and amend-out claims or allegations. He then mailed the amended charge containing only the age discrimination and she signed it and returned it to the Charlotte office.

The Court finds that the accounts of these transactions given by the EEOC representatives are more credible for three reasons. First they testified from notes made contemporaneously with the conversations, second, they have no interest in these proceedings, and third, the Plaintiffs who made no notes are interested in the proceeding and have made prior inconsistent statements about the subject matter. In addition it seems illogical that employees of the EEOC would tell a complaining party that they could not help her on a charge of national origin or sex discrimination in employment. The Court finds it difficult to accept such testimony particularly about sex discrimination charges in light of the many cases appearing on the calendars of this Court over the years in which sex discrimination charges had been investigated by EEOC.

On May 20, 1982, six days before she first contacted the EEOC she filled out a complaint form furnished to her by the North Carolina Human Relations Council in which she said age discrimination was the cause for her discharge. The form, like the EEOC form, contained a question as to why she thought she had been treated un-

fairly and she selected age as the reason and did not check the box for sex, or color or race or religion, or national origin. This selection was her own act and could not have been influenced by any official of EEOC.

In January 1983 she wrote to United States Senator John East to seek his assistance and stated: "I'll get right to the point. I was fired from my job on the 26th of April of 1982. I had worked for Milliken & Co. for about 12 years. I am 59 years old. I feel like I was fired because of my age. Milliken fired five people about the same time I was fired, all females over forty years old."

The Plaintiff Shirley D. McCurry also contends that her efforts to file national origin discrimination were rejected by EEOC personnel. She visited the Charlotte office on June 25, 1982 to complain about her discharge on June 23, 1982. In answer to the question as to what action was taken against her that she believed was discriminatory she stated in her "Intake Questionnaire" that "my age and they treated me in a very unfair way trying to force me to quit, and I didn't so they took action." In addition in another space in the questionnaire she stated, "hiring forign (sic) imports in" as a reason why the company took action against her. She does not contend that the EEOC employees told her they could not help on the national origin discrimination claim but merely states that she relied upon them to advise her on the charges of discrimination which she had a right to claim against Milliken. Mrs. McCurry was interviewed by Shirley Escribano, an EEOC Specialist, who testified that she explained to Mrs. McCurry EEOC's enforcement responsibility over Title VII charges and expressly mentioned all categories of prohibited discrimination, including national origin. Mrs. McCurry does not deny this statement. Ms. Escribano testified from notes made during the interview. Toward the end of the interview Mrs. McCurry stated that three other females, over forty years of age, were discharged near the same time of her discharge and that she had noticed a lot of Cambodians being hired in the winding department. At the conclusion of the interview Ms. Escribano drafted a handwritten charge of age discrimination for Mrs. McCurry's review and signature. The charge was reviewed with Mrs. McCurry and she made no suggested changes, deletions or additions. It was signed and sworn to that day and Mrs. McCurry never communicated any dissatisfaction with the charge to the officer or anyone else at EEOC. In a four page letter dated March 23, 1983, to EEOC investigator William Convey, who had been assigned to investigate the charge, Mrs. McCurry made repeated references to age discrimination but never mentioned sex or national origin discrimination, except in one instance to say that a Cambodian had been treated better than she on a complaint about the quality of the work. She expressed no dissatisfaction with the charge of age discrimination. There is no evidence that any EEOC employee attempted by any means to dissuade Plaintiff McCurry from filing or pursuing a charge of sex or national origin discrimination.

The Plaintiff Lucy R. Pace first contacted the EEOC by letter dated June 11, 1982 and received and docketed by EEOC on June 15, 1982. The letter referred to age and made no mention of any other kind of prohibited discrimination. In her initial response to Milliken's motion to dismiss, she filed an affidavit with the Court in which she stated that her letter to the EEOC complained of age discrimination and the influx of foreign-born workers and that her job was given to a foreign-born worker. Her original affidavit contained the statement that during her visit to the EEOC office she made several statements to the intake officer to the effect that Milliken was discriminating against older, American workers in favor of foreign workers, and that "the EEOC responded to my statements to the effect that the EEOC could not help on the issue of jobs being given to foreign people, but they would look into the possibility of age discrimination." However when confronted with a copy of the

letter from her to EEOC which made no reference to foreign-born workers or any other type of discrimination except age Mrs. Pace filed a "supplementary" affidavit in which she explained that she had first prepared the letter mentioning foreign workers, but then "talked to a co-worker who advised (her) the EEOC wouldn't help (her) with the issue of Cambodians taking people's jobs." She then states that she removed all mention of foreigners from the letter and sent it to the EEOC. Mrs. Pace does not identify the co-worker who advised her that the EEOC would not help with such a charge but it appears that such information could not have come from Plaintiff Watkins or Plaintiff McCurry. Mrs. Pace's letter is dated June 11, 1982 and received by EEOC on June 15, 1982. While Mrs. Watkins did not visit the EEOC office until June 17, 1982 and Mrs. McCurry did not go until June 25, 1982. Such a conflict precludes the Court from crediting her testimony that anyone at the EEOC told her or the other Plaintiffs that they "could not or would not help" on the national origin issue of discrimination.

Mrs. Pace, as did the other Plaintiffs, completed an intake questionnaire in which she stated that she believed she was discharged because of her age. This was done without any aid, advice or interference from the EEOC personnel. She was interviewed by Tony Caulder, the same officer who assisted Mrs. Watkins, and he testified that he conducted the usual pre-charge counselling covering all Title VII jurisdictional categories. After the interview he prepared a draft charge based upon the information furnished and submitted it to Mrs. Pace for approval and signature. She was advised that she could make any changes, additions or deletions she cared to make. She signed a written charge containing only age discrimination. Mr. Caulder's intake notes indicates that Mrs. Pace made reference to some young Cambodians both male and female and described one instance in which a young Cambodian male had received better treatment than she in a work related problem.

The EEOC's internal regulations, published in the EEOC Compliance Manual, §§ 2–6, Bureau of National Affairs (1979), at p. 2:0006, provide express instructions to intake officers such as Caulder and Escribano in situations as alleged by these Plaintiffs. This instruction is as follows:

*Do Not Refuse To Take Charge.* The foregoing provisions notwithstanding, a potential charging party should not be turned away who wishes to proceed in making a charge; if a person insists on filing an invalid charge, it should be taken.

■ The Court finds and concludes from the evidence, and its greater weight, that the EEOC personnel, Caulder and Escribano conferred with the Plaintiffs and advised each of them as to the jurisdiction of the Commission under Title VII and while they expressed their opinion as to what charge the evidence would support, they did not refuse to accept any charge or state they could not or would not help them on charges of sex and/or national origin discrimination. The Court finds that the evidence does not establish that the EEOC, or any of its personnel engaged in any acts or conduct which would result in a waiver, estoppel or equitable tolling of the statutory requirements in question here.

As shown in the Memorandum and Order dated June 26, 1984, it is not disputed that the EEOC never notified the Defendant Milliken that the Plaintiffs had filed any charge other than age discrimination. It is also not in dispute that the EEOC never investigated, attempted to investigate, conciliated, or attempted to conciliate any of the charges on any basis other than age discrimination.

There is no evidence to support any contention that the Defendant has either waived its right to raise the defense of Plaintiffs' failure to satisfy statutory prerequisites to suit under Title VII, or engaged in any conduct which would estop the Defendant from raising such defenses.

These motions to dismiss are filed under Rules 12(b)(1) and (6), F.R.Civ.P. and question both this Court's jurisdiction to enter-

tain the claims as well as the sufficiency of the allegations to state a claim under Title VII. Since the parties have presented live and affidavit testimony, as well as numerous documents, all of which have been considered by the Court, the motions to dismiss must be treated as motions for summary judgment under Rule 56, F.R.Civ.P.

In *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884 (3rd Cir. 1977), the procedure for the determination of a motion to dismiss for lack of subject matter jurisdiction is outlined as follows:

> The procedure under a motion to dismiss for lack of subject matter jurisdiction is quite different. At the outset we must emphasize a crucial distinction, often overlooked, between 12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings. The facial attack does offer similar safeguards to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist. 549 F.2d at 891.

See, *McLain v. Real Estate Board of New Orleans, Inc.*, 583 F.2d 1315, 1318, n. 1 (5th Cir.1978), vacated and remanded on other grounds, 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980). 5 C. Wright & A. Miller, Federal Practice and Procedure § 1350 at 555 (1969).

On the question of its own jurisdiction to hear these claims, the Court, as fact finder, may weigh the evidence to resolve disputed factual issues. Having done so this Court concludes that it lacks subject matter jurisdiction of the Plaintiffs' individual and class claims of sex and national origin discrimination under Title VII. The reasons for such conclusion are set forth in this Memorandum of Decision and the Memorandum and Order dated June 26, 1984.

Congress enacted Title VII of the Civil Rights Act of 1964 to assure equality of employment opportunity by eliminating those practices and devices which discriminate on the basis of race, color, religion, sex, or national origin. It selected as the preferred means of achieving this goal the voluntary compliance of the parties. The Congress created the Equal Employment Opportunity Commission and established procedures whereby state and local equal employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit. *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). As the Supreme Court has recently pointed out, "Title VII sets forth 'an integrated, multistep enforcement procedure' that enables the Commission to detect and remedy instances of discrimination. (citation omitted). The process begins with the filing of a charge with the EEOC alleging that a given employer has engaged in an unlawful employment practice." *EEOC v. Shell Oil Co.*, 466 U.S. 54, ——, 104 S.Ct. 1621, 1627, 80 L.Ed.2d 41, 52 (1984) (footnote omitted), quoting, *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 359, 97 S.Ct. 2447, 2450, 53 L.Ed.2d 402 (1977).

Judge Russell, speaking for the Court in *King v. Seaboard Coast Line R. Co.*, 538 F.2d 581 (4th Cir.1976), said:

> Title VII is limited in application to discrimination in employment based on race, color, religion, sex or national origin; it does not cover other types of

discrimination, however unfair they may be. And one who seeks relief under that Title must, as a prelude to any right to sue, file a charge "in writing" and "under oath" with the EEOC within ninety days (now 180 days) after the act of discrimination of which he complains occurred. That charge, enlarged only by such EEOC investigation as reasonably proceeds therefrom, fixed the scope of the changing party's right to institute a civil suit. The suit filed may encompass only the "discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge." *EEOC v. General Electric*, 532 F.2d 359 (4th Cir.1976).

In *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844 (4th Cir.1979), the Court held that,

... a plaintiff in a civil action under Title VII must allege and prove the filing of a timely charge of discrimination with the Equal Opportunity Commission together with receipt of, and action on, a statutory notice of his right to sue. 42 U.S.C.A. § 2000e–5(f)(1). Neither the complaint nor the amended complaint alleges that any of the applicant-plaintiffs complied with these prerequisites. They were not entitled to sue under Title VII, and their claims were properly dismissed. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011 [1019], 39 L.Ed.2d 147.

■ The Courts have somewhat relaxed their strict adherence to the statutory requirements as prerequisites to the institution and maintenance of suit in federal court under Title VII, but no court has held that Plaintiffs can bypass the EEOC and all of the requirements of the statute. In *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091 (4th Cir.1982), the Court held under the facts of that case that it is the entitlement to a "Right to Sue" notice, rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts under § 2000e–5(f)(1). Going one step behind the issue in *Perdue*, however, it is clear that the filing of a Title VII charge of discrimination is a prerequisite to the "entitlement" to the notice of right to sue discussed therein. The Supreme Court has recently held that, "the existence of a charge that meets the requirements set forth in § 706(b), 42 U.S. C.A. § 2000e–5(b), is a *jurisdictional prerequisite* to judicial enforcement of a subpoena issued by the EEOC." *EEOC v. Shell Oil Co., supra* (emphasis added). If the existence of a valid charge is a jurisdictional prerequisite to the EEOC's entering upon the first step of the enforcement procedures given the agency under Title VII, this Court has no reluctance in similarly holding with regard to the final step of the enforcement procedures allotted to private litigants under Title VII.

■ However, as has recently been made clear the, "filing of a *timely* charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). (emphasis added). There is no dispute in these matters concerning whether Plaintiffs Watkins, McCurry, and Pace filed timely charges of age discrimination under the ADEA. Nor is there any dispute concerning whether Defendant Milliken has engaged in any conduct by which it could be said to have waived, or to be estopped from asserting, the defenses of failure to file Title VII charges and failure to receive right to sue notices under Title VII. The only question, therefore, is Plaintiffs' contention that, under the circumstances of these cases, Title VII's charge-filing and notice of right to sue requirements should be equitably tolled, and, as has been noted above, on this issue the burden of proof lies upon Plaintiffs.

Plaintiffs argue that these cases fall within that line of cases which permit suit under Title VII when, through no fault of the plaintiff, the EEOC has acted in some fashion to preclude the plaintiff from satisfying all of the statutory preconditions to

suit. Plaintiffs rely upon such decisions as *Perdue, supra; National Organization for Women (NOW) v. Sperry Rand Corp.,* 457 F.Supp. 1338 (D.Conn.1978); and *Moore v. Memphis Light, Gas & Water,* 21 EPD ¶ 30,379 (W.D.Tenn.1979). Those cases do indeed stand for that proposition. In *Perdue,* the Fourth Circuit held that plaintiff, whose charge of discrimination had resulted in an EEOC-approved conciliation agreement with her employer, could sue under Title VII for the employer's alleged breach of the agreement even after EEOC refused her request for a right to sue notice after the breach. Similarly, in *NOW,* the court held that EEOC's failure to issue a notice of right to sue to that organization, after an EEOC officer told the organization it lacked standing to pursue sex and race charges jointly with an individual charging party, did not bar a subsequent suit in federal court by both NOW and the individual plaintiff. It is important to note, of course, that in both *Perdue* and *NOW,* the defendants had received notice that Title VII charges had been filed against them, and that the plaintiffs had, "done everything within [their] power to comply with the procedural requirements of Title VII, ..." *NOW,* 457 F.Supp. at 1342. Finally, in *Moore,* the court permitted suit under Title VII despite the fact that no Title VII charge had been filed. However, in that case, the evidence revealed that plaintiff's attempt to file a race discrimination charge had been rejected by EEOC for plaintiff's failure to identify a white person who had been better treated in a similar situation. *Moore,* 21 EPD ¶ 30,379.

All of these decisions fall within the general rule announced by the Fourth Circuit that, "A Title VII complainant is not charged with the Commission's failure to perform its statutory duties." *Russell v. American Tobacco Co.,* 528 F.2d 357, 365 (4th Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976) (suit permitted where, after valid charge was filed, EEOC completely neglected to inform defendant that charge had been filed). This Court readily accepts the *Russell* prin-

ciple; it is a principle, however, which has no application to the facts of this case.

The Court has found that the EEOC neither rejected Plaintiffs' attempts to file charges of sex and reverse-national origin discrimination nor in any fashion attempted to dissuade Plaintiffs from filing such charges. Rather, while Plaintiffs did make some references to Cambodians in Defendant's work place, they all consistently identified their age as being the cause of their discharges. Each Plaintiff freely signed charges alleging only age discrimination after being specifically invited by the EEOC representative to make any additions or changes to the charges drafted by EEOC. Plaintiffs neither made nor attempted to make any such changes; nor, apparently, did any Plaintiff ever voice any objection to the contents or scope of their charges until after Defendant had filed and served its motion to dismiss.

The facts of these cases take them outside the scope of the *Russell* decision. It is clear here that the EEOC is not guilty of misfeasance or nonfeasance in the performance of its statutory duties under Title VII. The case of *Hawkins v. Allis-Chalmers,* 527 F.Supp. 895 (W.D.Mo.1981) seems to fit the facts of these cases and is far more persuasive on this issue. In *Hawkins,* the plaintiff attempted to sue both her employer and her union under Title VII. The union moved to dismiss for lack of subject matter jurisdiction because no charge of discrimination had been filed against it. The plaintiff argued that "she told the EEOC to charge both the employer and the union, but EEOC failed to do so," and urged the court to apply the *Russell* rule permitting suit when jurisdictional failures were caused by EEOC. The court declined plaintiff's suggestion as it recognized the critical distinction between jurisdictional failures chargeable only to EEOC and others which are not. Judge Hunter in language equally applicable here, stated:

> All of the above (*Russell*-type) situations were procedures completely within the control of EEOC. The charge, however, is not completely within the EEOC's con-

trol in that the charging party must sign the charge. In her affidavit in support of her opposition to defendant's motion to dismiss, plaintiff states that she signed the charges. This situation is more similar to that in *Bryant v. Western Electric Co.*, 572 F.2d 1087 (5th Cir. 1978). In *Bryant*, the plaintiff had been employed by Western Electric. He claimed that he told the EEOC that Western was his employer and then signed the charge prepared by the EEOC. The charge named South Central Bell instead of Western. The district court could find no theory which would allow the plaintiff to avoid the requirement of a charge naming the party being sued, and the Fifth Circuit affirmed. *Id.*, 527 F.Supp. at 897–98.

As in the *Hawkins* and *Bryant* cases, this Court can find no reason to toll the requirement that these Plaintiffs shall file Title VII charges of sex and national origin discrimination against the Defendant before launching a wide-ranging class action on such charges. The Defendant has not had its statutorily-required opportunity to conciliate such charges through EEOC and EEOC has made no investigation of such charges. None of these failures were the fault of EEOC or the Defendant. Each of the Plaintiffs were fully advised of the procedure and elected to pursue age discrimination charges only. This Court lacks subject matter jurisdiction over these Title VII claims and they will be dismissed.

In addition to Title VII relief the Plaintiffs seek individual and class relief under the ADEA and request the Court to certify a class of Hatch Mill employees who have been terminated or discriminated against in their employment because of age, the class to consist of all persons over tbe age of 40 years, and to notify potential class members of their inclusion in these actions and of their right to opt-out, all as provided for by Rule 23, F.R.Civ.P. Along with the filing of the complaints the Plaintiffs served upon the Defendant interrogatories which request, *inter alia*, the names, ages and last known address of all persons employed at Hatch Mill during the past seven years.

The Defendant moved to dismiss Plaintiffs' ADEA claims to the extent that such claims seek Rule 23 class relief, arguing that the Act permits no such relief and that the allegations fail to state claims upon which such relief can be granted, Rule 12(b)(1), F.R.Civ.P. The Plaintiffs in responding to the Defendant's motion to dismiss recognize the inapplicability of Rule 23 to ADEA actions and concede that any "class" type relief under the ADEA is only available pursuant to the "representative action" provisions found in § 16(b) of the Fair Labor Standards Act, as amended, 29 U.S.C.A. § 216(b). Nevertheless, the Plaintiffs seek certification under § 216(b) of the FLSA and "request answers to their discovery of the names, addresses and birth dates of potential class member so they may be notified of their right to opt in."

The Plaintiffs' efforts to bring an age discrimination class action under Rule 23, fails to state a claim upon which relief can be granted. Section 7(b) of the ADEA provides, in pertinent part, that, "the provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in Sections 211(b), 216 [except for subsection (a) thereof], and 217 of this title ..." 29 U.S.C.A. Section 626(b). Section 216 of Title 29 is the codification of Section 16 of the Fair Labor Standards Act (FLSA), 29 U.S.C.A. Section 216, and in Section 16(b) of the FLSA, Congress provided a specific mechanism for "representative" actions under the law, a mechanism also incorporated *in toto* in the ADEA.

Section 216(b) of FLSA provides that:

An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees similarly situated. *No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed*

*in the court in which such action is brought.* (Emphasis added).

Thus Section 216(b) provides for the maintenance of an "opt in" class action in clear contradistinction to the "opt out" class action devise provided by Rule 23.

As set forth in *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir.1975):

There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b). In a Rule 23 proceeding a class is described; if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment, whether favorable or unfavorable, unless he has "opted out" of the suit. Under § 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively "opted into" the class; that is, given his written, filed consent. (citation omitted).

. . . . .

Rule 23(c) provides for "opt out" class action. FLSA § 16(b) allows as class members only those who "opt in." These two types of class actions are mutually exclusive and irreconcilable. Since ADEA § 7(b) adopts FLSA § 16(b), we must hold that only "opt in" type class actions may be utilized in age discrimination cases. Rule 23 cannot be invoked to circumvent the consent requirement of the third sentence of FSLA (sic) § 16(b) which has unambiguously been incorporated into ADEA by its Section 7(b).

*Id.*, 513 F.2d at 288–89 (footnotes and citations omitted).

*LaChapelle* has been looked upon with favor by virtually every federal court to decide this question. While the Court of Appeals for the Fourth Circuit has not directly addressed the question every district court in the circuit to have considered the question has followed *LaChapelle*.

Judge Gordon in two decisions from the North Carolina Middle District granted the defendants' motions to dismiss and strike the plaintiffs' Rule 23 class action allegations brought under ADEA. *Hill v. Western Electric Co.*, 76 F.R.D. 4 (M.D.N.C. 1976) and *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C.1977).

The Court holds that the Plaintiffs may not maintain a class action under the "opt out" provisions of Rule 23. The language of the ADEA itself, by its explicit incorporation of the "opt in" provision of Section 16(b) of FLSA, 29 U.S.C.A. Section 216(b), clearly prohibits the Plaintiffs' efforts to have this Court treat these actions as Rule 23 class actions and "proceed to certify the class and subclasses set out in paragraph 2.3 of the complaints. Rather, as the authorities cited above" have held, these actions may only be maintained as representative actions on behalf of those similarly situated persons who first affirmatively "opt in" to the actions by filing written consents with the court. Nor is the Court persuaded that § 16(b) of the FLSA permits either discovery of "class members'" names and addresses or notice to them of their right to "opt in."

Section 16(b) of the FLSA was enacted as a measure to prohibit the kind of notice-based class action procedures contained in Rule 23. As the Court of Appeals for the Ninth Circuit has recently held:

the FLSA contains no specific authority for giving notice to class members who are potential party plaintiffs. Rule 23, of course, provides for court-directed notice to class members ... most courts that have interpreted the FLSA, including this court, have held that neither the named plaintiffs, their counsel, nor the court have the power to provide notice to FLSA class members. [*Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859,] 863 [ (9th Cir.1977) ]; *Locascio v. Teletype Corp.*, 74 F.R.D. 108, 112 (N.D.Ill.1977); *Roshto v. Chrysler Corp.*, 67 F.R.D. 28, 30 (E.D. La.1975); *McGinley v. Burroughs Corp.*, 407 F.Supp. 903, 911 (E.D.Pa.1975).

*Partlow v. Jewish Orphans' Home*, 645 F.2d 757, 758–59 (9th Cir.1981). The *Kinney* line of authority continues to be the

majority rule and the rule within the Fourth Circuit. *See, e.g., Haynes v. Singer Co., Inc.,* 696 F.2d 884 (11th Cir.1983); *Schmidt v. Fuller Brush Co.,* 527 F.2d 532 (8th Cir.1975) (mandamus lies against district court's certification of FLSA class action and order requiring notice to potential class members); *Baker v. The Michie Co.,* 93 F.R.D. 494 (W.D.Va.1982); *Madrigal v. Green Giant Co.,* 25 W.H. Cases 89 (E.D. Wash.1981) (representative parties not entitled to order requiring employer to furnish list of names of potential class members); and *Montalto v. Morgan Guaranty Trust Co.,* 83 F.R.D. 150 (S.D.N.Y.1979).

The Court of Appeals for the Tenth Circuit has recently spoken to the precise issue presented by this case. In *Dolan v. Project Construction Corp., Etc.,* 725 F.2d 1263, 26 W.H. Cases 984 (10th Cir.1984), a FLSA plaintiff filed a "representative" action and served upon defendant interrogatories which demanded that defendant, "[s]tate the name and last known address of each employee of the defendant ... within the last two years including the date of hire, date of termination, days and hours of each day worked, the wage paid said employee ... [etc.]" *Id.* at 1265.

In *Dolan,* the Tenth Circuit assayed the propriety of such interrogatories against the legislative history clearly evincing congressional disapproval of such tactics. Borrowing at length from the court's opinion, the degree to which plaintiffs would have this Court circumvent the will of Congress becomes clear:

> In its original form, the FLSA made provision for an action by an employee in behalf of himself and other employees similarly situated. However, after decisions of the United States Supreme Court interpreted the FLSA to provide for compensation that historically had not been reimbursed, [citation omitted] a virtual flood of litigation ensued in the form of class actions. Perceiving the flood of litigation as a serious threat to interstate commerce the Congress moved to limit the applicability of the FLSA to certain industry practices. *Particularly relevant here, the Congress also limited*

*the class action procedures for filing representative actions.* In describing the financial burdens affecting interstate commerce, the House of Representatives' Report stated:

> "The procedure in these suits follows a general pattern. A petition is filed under section 16(b) ... by one or two employees in behalf of many others. *To this is attached interrogatories calling upon the employer to furnish specific information regarding each employee during the entire period of employment. The furnishing of this data alone, is a tremendous financial burden to the employer."*

H.R.Rep. No. 71, 80th Cong., 1st Session 4 (1947); 1947 U.S. Code Cong. & Ad. News (80th Cong., 1st Session) 1029, 1032. Not only did Congress disapprove of the normal discovery practices associated with class actions, but it also made the specific finding that unless the provisions of the FLSA of 1938 were changed "the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged." § 1(a)(7) Portal-to-Portal Act of 1947.

The opt-in language of § 216(b) was a direct result of this clear congressional dissatisfaction with the original class action provisions of the FLSA. In fact, the relevant language of § 216(b) was entitled, "Representative Actions Banned" in the Portal-to-Portal Act.

Clearly, Congress sought to limit the nature of a class action suit based upon an alleged FLSA [or ADEA] violation. While still providing for collective and representative actions, it intended to severely limit the burden on the defendant and the participation of the court.

*Dolan v. Project Construction Corp.,* 725 F.2d at 1266, 1267, 26 W.H. Cases at 985–86 (emphasis added).

It is under the same statute, with the same legislative history that the Plaintiffs ask this Court to proceed as if the distinction between 29 U.S.C.A. Section 216(b) and

Rule 23 did not exist. The Court can find no reason to disregard the words of the statute and the holdings in *LaChapelle, Hill* and *Wagner,* and the host of other cases denying such proceedings.

For the foregoing reasons the Plaintiffs' ADEA allegations are not maintainable in the fashion of a Rule 23 class action. The Court will not compel notice or production of names of potential class members. The Court will allow a reasonable length of time for potential parties-plaintiffs to "opt in" by filing written consent to be made such parties. See *Naton v. Bank of California,* 649 F.2d 691, 693 (9th Cir.1981) (30 days in which to "opt in" approved).

These actions have been pending for several months and the Court believes that prospective plaintiffs have had time to hear of its pendency and thirty days should be long enough for them to "opt in." The Court will allow thirty days from the date of this Memorandum of Decision for other parties-plaintiffs to file written consents to become parties to these actions.

Each Plaintiff alleges that her discharge by the Defendant constituted a breach of her employment contract in violation of North Carolina law. They all allege the existence of an implied contract which is said to arise from the fact that the Defendant had in effect personnel policies which afforded rights based on seniority and performance evaluations and rights to oral and written warnings prior to severe disciplinary action. The Defendant admits that the Plaintiffs were discharged but it contests this Court's jurisdiction over these state law claims—claims which Plaintiffs' counsel admit could have been, and could still be brought and raised in state court.

■ Federal courts have the power to exercise pendent jurisdiction when the federal and state claims "derive from a common nucleus of operative fact" and the claims are such that the plaintiff would "ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *Ferguson v. Mobil Oil Corp.,* 443 F.Supp. 1334 (S.D.N.

Y.1978), *aff'd mem.,* 607 F.2d 995 (2nd Cir.1979). Even if the power is found, *Gibbs* does not "require" the district court to hear the state claim. *Hughes v. Marsh Instrument Co.,* 28 F.E.P. Cases (N.D.Ill. 1981). Having found the power, the Court must also consider, in its discretion, whether "judicial economy, convenience and fairness" will be served. These considerations include determining such issues as whether jury confusion will result, whether state claim issues will predominate, or whether state claim issues will present unsettled issues of state law.

■ The only remaining federal claim is each Plaintiff's allegation of age discrimination. They have requested a jury trial and under the statute they are entitled to one. *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). The Plaintiffs would also be entitled to a jury trial on their common law contract claims if those claims remain as pendent to their age claims.

■ In the ADEA claims the sole dispositive issue will be whether the Plaintiffs were discharged because of their age. *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230 (4th Cir.1982). In order to prevail upon their contract claims the Plaintiffs will be required to prove the existence of the alleged "policies and practices" said to constitute the implied contracts. There appears to be no relationship between the existence of such policies and practices, on the one hand, and their contentions that they were discharged because of their age, on the other. Since the Defendant admits that it discharged the Plaintiffs, their proofs with regard to their contract claims will need to focus, not on the discharge but upon facts said to support the formation of the contracts in the first place. The facts pertaining to an implied contract would have no connection or bearing on whether the Plaintiffs were discharged because of their age. For these reasons, the Court finds and concludes that the Plaintiffs' federal and state claims do not derive from a "common nucleus of operative fact," as

required by *Gibbs,* and that this Court therefore lacks the power to entertain the state law claims.

Assuming for the sake of argument that the Court had the power to adjudicate the contract claims, there are two compelling reasons for it to decline to exercise that power. First, the Court is of the opinion that there exists a substantial possibility of jury confusion in the mixing of the age claims and the implied contract claims. Second, the state of the law in the private-sector, at-will employment in the State of North Carolina.

Neither the Supreme Court nor the General Assembly of North Carolina has yet recognized an "implied contract" exception to the general rule of at-will employment. While in some cases, particularly those involving public employees, it may arguably be appropriate to incorporate disciplinary or other personnel policies into an employment contract otherwise silent on such matters, see, *e.g. Rhodes v. Board of Education of Person County, Etc.,* 58 N.C.App. 130, 293 S.E.2d 295, *rev. denied,* 306 N.C. 744, 295 S.E. 479 (1982), it remains the rule in North Carolina that, absent agreement upon a definite term of duration, employment contracts are terminable at the will of either party without regard to cause. See, *e.g., Still v. Lance,* 279 N.C. 254, 182 S.E.2d 403 (1971); *Brooks v. Carolina Telephone & Telegraph Co.,* 56 N.C.App. 801, 290 S.E.2d 370, 372 (1982).

The Court is of the opinion that the proper arena for the resolution of such far-reaching questions of state employment should be the state court or legislature. See, *e.g. Dockery v. Lampart Table Co.,* 36 N.C.App. 293, 244 S.E.2d 272, *rev. denied,* 295 N.C. 465, 246 S.Ed.2d 215 (1978). The Court agrees with Judge Erwin's reasoning in *Sanders v. Duke University,* 538 F.Supp. 1143 (M.D.N.C.1982), when he said: "The question of whether a university's faculty handbook is part of an employment contract ... has not been addressed by the North Carolina courts. (citation omitted) Accordingly, the courts of North Carolina, not a federal court, should initially resolve the issue." *Id.,* 538 F.Supp. at 1148.

The Court therefore concludes that, even if it possessed the power to entertain Plaintiff's implied employment contract claims, which it does not it would not exercise that power because of the likelihood of jury confusion and the issues therein would be best decided, for the first time, by the state courts. Accordingly, the Defendant's motion to dismiss the state law contract claims for lack of jurisdiction will be allowed and the claims dismissed.

For the reasons set forth in these findings and conclusions, the Court will grant the Defendant's motions to dismiss the Plaintiffs' Title VII claims, their class action claims under ADEA, and the pendent state law employment contract claims. The case will proceed on the claims filed under ADEA but without class action. An appropriate order dismissing those claims and striking them from the complaints will be issued and entered.